**In the Matter of the Application for the Discipline of Ellsworth Irving SERSTOCK, an Attorney at Law of the State of Minnesota.**

**No. 44297.**

Supreme Court of Minnesota.

March 5, 1982.

Michael Hoover, Director of Lawyers Professional Responsibility, Lawyers Professional Responsibility Board, St. Paul, for appellant.

Freeman, Gill, Anderson, Egan & Keating and Gerald Freeman, Minneapolis, for respondent.

PER CURIAM.

This case is before the court on petition from the Director of the Lawyers Professional Responsibility Board. Respondent Ellsworth Irving Serstock stipulated to a suspension in 1980 pending final determination of this disciplinary proceeding, and a hearing on the petition for disciplinary action was held by Retired District Judge Ben Grussendorf in May 1981. Referee Grussendorf recommended either an indefinite suspension for at least 3 years or disbarment of the respondent. We have decided that disbarment must be the appropriate discipline in this case.

Respondent Serstock was admitted to practice in Minnesota in 1952 and has worked as a sole practitioner in Minneapolis since that time. He participated in numerous in-patient treatment programs for alcoholism between 1965 and 1969 and has been abstinent since 1969. Respondent has been active in Alcoholics Anonymous since 1969, and upon his stipulated suspension from the practice of law in 1980 he began employment as a chemical dependency counselor at 3R's Family Center in Minneapolis.

In 1975 respondent was placed on probation for multiple charges of neglect of his clients' matters and failure to file United States and Minnesota tax returns for the years 1954, 1956, 1957, and 1959 through 1971. Conditions of respondent's probation included a requirement that he enter into agreements with the tax authorities for settlement of the tax liabilities, make timely filings of subsequent tax returns, and conduct his law practice in accordance with the Code of Professional Responsibility.

In 1977, a second panel of the Lawyers Professional Responsibility Board found that respondent Serstock had neglected the affairs of several clients during 1976 and 1977. The proceeding was stayed on condition that respondent undergo psychological counseling, and after beginning this counseling, respondent stipulated in 1978 to the issuance of a private reprimand.

The current petition arises out of six complaints against Serstock. Not only has he failed or been unable to settle his large tax liabilities, but he also failed to file tax returns for at least 1 year since 1973, both failures in direct violation of his earlier probation order. Three complaints of client neglect, two in 1978 and one in 1979, have been filed against Serstock involving his failure to return unearned retainer funds or to take timely action on clients' requests for assistance. Serstock has admitted improper record keeping and misuse of his trust account for personal purposes. Finally, Serstock failed to cooperate fully with the Hennepin County Ethics Committee's requests for information in its investigation of two complaints of client neglect.

There is no question that respondent Serstock's actions warrant serious discipline. Referee Grussendorf concluded that respondent Serstock's failure to resolve his income tax liabilities violated the terms of his probation as well as the Code of Professional Responsibility, Disciplinary Rules DR 1–102(A)(1), DR 1–102(A)(3), DR 1–102(A)(5)

and DR 1–102(A)(6) (1981). Respondent's neglect of his clients' matters violated the above rules, as well as DR 1–102(A)(4), DR 6–101(A)(3), DR 7–101(A)(1), DR 7–101(A)(2), and DR 7–101(A)(3). His trust account practices were found to have also violated DR 9–102(A) and DR 9–103. Respondent's failures to respond to the disciplinary investigations were violations of DR 1–102(A)(1), DR 1–102(A)(5) and DR 1–102(A)(6).

Respondent has violated the Code of Professional Responsibility in five distinct respects, and each type of violation alone would warrant serious discipline. Judge Grussendorf, as referee, thought disbarment might be compelled if this court were "to remain consistent with its other prior holdings in matters of this nature." In looking to prior discipline cases as a guide, however, it is essential to keep the totality of the violations in mind. No two cases present a combination of violations identical to this one and thus earlier cases are helpful only by analogy. When we look at the overall course of conduct and keep our prior decisions in mind, it appears to us that disbarment, rather than suspension, is the appropriate discipline. As we have so often stated, the purpose of discipline is not primarily punitive but "to guard the administration of justice and to protect the courts, the legal profession and the public." *In re Hanson*, 258 Minn. 231, 233, 103 N.W.2d 863, 864 (1960).

Failure to file federal and state tax returns is clear ground for suspension or disbarment in this state. *See, e.g., In re Bunker*, 294 Minn. 47, 199 N.W.2d 628 (1972); *In re Bunker*, 269 N.W.2d 71 (Minn. 1978). Violation of the term of probation also warrants serious disciplinary action.

Then, too, there is respondent's continued neglect of his clients' affairs. Disbarment was imposed for repeated neglect of clients' business in the case of *In re Chmelik*, 203 Minn. 156, 280 N.W. 283 (1938). *See also In re Braggans*, 280 N.W.2d 34 (Minn.1979).

Though there is no specific evidence of appropriation of clients' funds, respondent's commingling of personal and client funds in his "trust" account, coupled with failure to maintain proper records also warrants serious professional discipline. *In re Bialick*, 298 Minn. 376, 215 N.W.2d 613 (1974). Unlike *In re Shaw*, 298 N.W.2d 133, 135 (Minn. 1980), where the commingling was a single event and lasted only a short time, here the violations were continuous and repeated. Finally, respondent's inexcusable lack of cooperation with the Hennepin County Ethics Committee evidences an indifference if not disregard of an attorney's responsibilities to his profession.

Recent suspension cases appear to involve fewer repeated or less variable violations than that of Serstock. *In re Peck*, 302 N.W.2d 356 (Minn.1981), involved complaints of negligence, commingling and lack of cooperation with the ethics investigations, but no tax violations. False representation to clients was the main complaint in *In re Iverson*, 305 N.W.2d 753 (Minn. 1981). *In re Bunker*, 269 N.W.2d 71 (Minn. 1978), involved violation of a probation order and failure to pay taxes but no accusation of client neglect or commingling of funds.

On the other hand, disbarment was considered appropriate for "inexcusable neglect" in *In re Braggans*, 280 N.W.2d 34 (Minn.1979), as well as in *In re Gennow*, 206 Minn. 389, 289 N.W. 887 (1939), and *In re Chmelik*, 203 Minn. 156, 280 N.W. 283 (1938). Disbarment was ordered for conversion of funds, neglect of client affairs and failure to file income tax returns in *In re Wackerbarth*, 287 N.W.2d 651 (Minn. 1979). To impose that sanction in this case would be both fair and consistent. The Maryland court, in a case quite similar to this one, disbarred a Maryland attorney for persistent client neglect and failure to resolve prior complaints of tax violations. *In re Phoebus*, 276 Md. 353, 347 A.2d 556 (1975). As in *Wackerbarth*, we find here "little prospect of correcting the behaviorial patterns" which led to past violations.

Because of the seriousness of respondent's repeated misconduct in violation of the reasonable terms of his 1973 probation and numerous rules of professional conduct,

we conclude we have no alternative but to order disbarment.

Disbarred.

KELLEY, J., took no part in the consideration or decision of this case.