In re Petition for DISCIPLINARY AC-
TION AGAINST Gerald McNABB, an
Attorney at Law of the State of Minne-
sota.

No. C6–95–2632.

Supreme Court of Minnesota.

May 7, 1998.

## OPINION

PER CURIAM.

Respondent Gerald McNabb was admitted to practice law in Minnesota in 1985. He received an admonition in 1990 and was placed on private probation in 1993. Under the terms of a 1996 stipulation for discipline, McNabb was suspended from the practice of law for a period of 9 months, for misconduct involving client neglect and misrepresentations to clients, and for representing a corporation in bankruptcy proceedings while serving on the corporation's board of directors, in violation of federal statutes. *See In re McNabb,* 549 N.W.2d 626 (Minn.1996).

While McNabb was suspended from practice, the Director of the Office of Lawyers Professional Responsibility (hereafter "Director") filed an additional petition for disciplinary action against McNabb. The petition alleged five separate counts of misconduct, including misappropriation of a significant amount of money from an elderly former client. The petition requested that McNabb be disbarred from the practice of

law. McNabb did not respond to the petition, nor did he appear at the hearing before this court. Given the serious nature of the misconduct, we conclude that disbarment is warranted.

Among the various allegations in the Director's petition, the most significant, which by itself would warrant disbarment, is the alleged misappropriation of funds and related forgery and misrepresentations that occurred after McNabb was suspended. Over a period of years, McNabb had represented an elderly client, Marie Trapp. At various times while representing Trapp, McNabb had a valid power of attorney to act on behalf of Trapp and assisted in managing her financial affairs. All such powers of attorney had expired prior to McNabb's suspension in July 1996. In August 1996, McNabb prepared a statutory short form power of attorney in his favor as attorney-in-fact for Trapp, forging her signature and that of his brother as notary. Beginning on August 21, 1996, McNabb presented the forged power of attorney to at least five different financial institutions at which McNabb knew Trapp maintained accounts or certificates of deposit. Relying on the forged power of attorney, each of the financial institutions allowed McNabb to withdraw sizable sums of money from Trapp's accounts or to prematurely cash certificates of deposit. McNabb misappropriated approximately $145,000 from Trapp between August 21 and August 30, 1996. After discrepancies were discovered by Trapp's nephew in September, McNabb returned approximately $75,000 to one of the financial institutions. McNabb's conduct in misappropriating funds, forging a power of attorney and the notarization of that document, and making misrepresentations to bank officials violated Minn. R. Prof. Conduct 8.4(b) and (c).

The Director's petition alleged several additional incidents of misconduct, including two additional occurrences of misappropriation of client funds that came to light only after McNabb's suspension. In the first of these, Janet Bauer retained McNabb to represent her minor grandson, K.W.S., in a juvenile criminal matter. Bauer was the conservator of funds held in trust for K.W.S., who was incarcerated in Lino Lakes Juvenile Care Facility. Anoka County sought funds from K.W.S. in repayment for his incarceration, and the court entered judgment in favor of Anoka County. When Bauer instructed McNabb to appeal the court's order, McNabb agreed to do so but requested a check in the amount of the judgment. Bauer forwarded $9,812.52 from the conservatorship to McNabb, but McNabb failed to file the appeal. Instead, he misappropriated the funds to his personal use, promising even after he was suspended to work on the appeal.

Second, when Aquadynamic Technologies, Inc. ("Aquadynamic") purchased All Media, a Minnesota business, in 1994, it retained McNabb (who had been corporate counsel for All Media) as its local counsel. Aquadynamic forwarded a check in the amount of $10,000 to McNabb as a retainer for future services, and $7,500 to be forwarded to Norwest Trust as a transfer fee. McNabb failed to forward the transfer fee but falsely informed Aquadynamic that he had done so. After Aquadynamic discharged him, McNabb returned $4,500 of the $7,500 he had misappropriated but failed to return the remaining $3,000 after being requested to do so. He falsely blamed All Media for spending the funds. McNabb's conduct in neglecting the Bauer and Aquadynamic matters, making misrepresentations to his clients and misappropriating client funds intended to be paid to other parties violated Minn. R. Prof. Conduct 1.3, 4.1, 8.4(b), (c) and (d).

In addition to these more serious claims, the Director also alleged other misconduct, including several violations of Rule 26, Rules on Lawyers Professional Responsibility (RLPR), which requires a suspended lawyer to notify each client, opposing counsel and the tribunal of the lawyer's suspension, and to provide proof of such notification with the Director's office within 15 days of the court's order of suspension. McNabb did not file the affidavit of compliance required by Rule 26(e), and failed to notify several clients of his suspension. Further, the Director alleged non-cooperation with the Director's investigation of complaints. The Director's petition identified eight separate incidents arising after McNabb's suspension in which

McNabb failed to respond to requests from the Director for information concerning complaints filed against him. McNabb's failure to respond to the Director's requests for information and documentation violated Minn. R. Prof. Conduct 8.1(a)(3), and Rule 25, RLPR.

Finally, the Director's petition alleged four additional incidents of client neglect and misrepresentations that were only discovered after McNabb's suspension, and therefore had not been considered in previous disciplinary proceedings. In each of these incidents, McNabb undertook to represent clients but failed to take any action on their behalf, although he falsely told them that he had done so. He made repeated misrepresentations to these clients concerning action that he had taken to resolve their cases, even alleging that he had obtained a successful judgment, when in fact he had not yet filed a claim. McNabb's neglect of these matters prejudiced his clients' rights. McNabb's conduct in neglecting these client matters and making misrepresentations to his clients violated Minn. R. Prof. Conduct 1.3, 4.1 and 8.4(c) and (d).

As a result of the Trapp and Bauer matters, McNabb was convicted on October 28, 1997, in Ramsey County of two counts of felony theft by swindle in violation of Minn. Stat. § 609.52, subd. 2(4) (1996). Under Rule 19(a), RLPR, "[a] lawyer's criminal conviction in any American jurisdiction * * * is, in proceedings under these Rules, conclusive evidence that the lawyer committed the conduct for which the lawyer was convicted." In addition, McNabb is deemed to have admitted all of the allegations in the petition. *See* Rule 13(b), RLPR. Since all of the allegations are deemed to be true, the only issue before us is the appropriate discipline to be imposed.

 The purpose of attorney discipline is not to punish the attorney but rather "to guard the administration of justice and to protect the courts, the legal profession and the public." *In re Serstock,* 316 N.W.2d 559, 561 (Minn.1982) (citation omitted). "In determining the appropriate sanction to impose, the court considers the nature of the misconduct, the cumulative weight of the vio-

lations, and the harm to the public and to the profession." *In re Anderley,* 481 N.W.2d 366, 369 (Minn.1992). Deterrence of similar misconduct by members of the bar in general and by the respondent specifically is also an appropriate purpose of attorney discipline. *See In re Daffer,* 344 N.W.2d 382, 386 (Minn. 1984).

McNabb's misconduct involved a variety of offenses: misappropriation of client funds, forgery, client neglect, misrepresentation, failure to communicate his suspension to clients, and noncooperation with the disciplinary investigation. Further, McNabb had been disciplined on three prior occasions, in 1990, in 1993 and in 1996. The most egregious instance of misconduct, *viz.,* felony theft of $145,000 from a former client, occurred while McNabb was already under suspension. We conclude from this that the previous incidents of discipline, including suspension, were not adequate to deter McNabb from committing further serious misconduct.

 Misconduct involving misappropriation of client funds normally merits disbarment. *See In re Shoemaker,* 518 N.W.2d 552, 555 (Minn.1994); *see also In re Dovolis,* 572 N.W.2d 734, 736 (Minn.1998). When the misappropriation is aggravated by forgery of a client signature, this court has consistently held that disbarment is the most appropriate discipline. *Dovolis,* 572 N.W.2d at 736; *see also In re Swerine,* 513 N.W.2d 463, 466 (Minn.1994). McNabb misappropriated client funds in the Bauer and Aquadynamic matters. He stole $145,000 from Trapp, a former client for whom he had previously had a valid power of attorney while he was representing her. He used his confidential knowledge of her financial affairs to drain her accounts by means of a forged power of attorney. For disciplinary purposes, McNabb's conviction conclusively proves that he stole the monies alleged. Conviction of a felony generally warrants disbarment unless significant mitigating factors exist. *In re Koss,* 572 N.W.2d 276, 278 (Minn.1997).

In light of McNabb's past disciplinary violations and the seriousness of his present misconduct, we agree with the Director that disbarment is warranted. Accordingly this

court, having considered all of the facts and circumstances of this case, now orders that Gerald McNabb is disbarred from the practice of law in the State of Minnesota.

The Director is awarded costs and disbursements in the amount of $900.

Disbarred.